UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JAY HARRIS,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>MATTHEW ATCHLEY, et al.,<br><br>　　　Defendants. | Case No. 22-cv-00529-EMC<br><br>**ORDER OF SERVICE, AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Docket No. 2 |

This is a *pro se* prisoner's civil rights action. Plaintiff Michael Harris alleges that he is "a convicted child rapist and molester 19 times over," Docket No. 1 ("Complaint") ¶ 43, and raises claims regarding about his impending transfer from sensitive needs custody at Salinas Valley State Prison to a non-designated yard at Corcoran State Prison, *see generally, id*. Mr. Harris also has moved for a temporary restraining order, *see* Docket No. 2 ("TRO Motion"), and to be permitted to proceed in forma pauperis, *see* Docket Nos 3, 6 ("IFP Motion"). The Court granted Mr. Harris's IFP Motion in a separate order. *See* Docket No. 8.

The Complaint is now before the Court for review under 28 U.S.C. § 1915A. For the reasons set forth below, the Court finds that the Complaint states cognizable claims under the Eighth Amendment. Mr. Harris's other claims are dismissed without leave to amend.

In a separate order, the Court ordered Defendants to respond to Mr. Harris's TRO Motion. Docket No. 7. Defendants timely filed their response. Docket No. 9. For the reasons stated below, the TRO Motion is **DENIED**.

## I.　BACKGROUND

Mr. Harris has been convicted of the rape and molestation of a child. FAC ¶¶ 31, 43. He

1   has been in the custody of the California Department of Corrections and Rehabilitation ("CDCR")
2   since 2010. *Id.* ¶ 5. At all relevant times, Mr. Harris has been incarcerated at Salinas Valley State
3   Prison ("SVSP"), *id.* ¶ 6, as a sensitive needs prisoner, a designation formerly known as protective
4   custody prisoners, *id.* ¶ 15.

5   At some point during 2021 Mr. Harris was informed that he likely would be transferred to
6   another prison. *See generally, id.* Mr. Harris alleges that this transfer will place his personal
7   safety at risk, *see id.* ¶¶ 60-67, 76-85, and will deprive him of "educational equal protection," *id.*
8   ¶¶ 68-72, 86-96. Mr. Harris also claims that he has been deprived of his right to grieve prison
9   wrongs and to access the courts. *See id.* ¶¶ 68-72, 86-96

10  A.   Allegations Related to Education

11  At various times during his incarceration at SVSP, Mr. Harris has taken courses from
12  Hartline College and Coastline College. Compl. ¶ 14. In June of 2021, Mr. Harris was enrolled in
13  summer courses at Coastline College. *Id.* ¶¶ 26-27.

14  In a classification committee meeting on June 8, 2021, Mr. Harris was informed that he
15  might be transferred to another prison. *Id.* ¶¶ 26, 28. In the same meeting, Mr. Harris was
16  informed that his new institution would "have educational opportunities which were equal to those
17  at SVSP." *Id.* Mr. Harris also was informed that he would be able to complete his summer
18  courses at Coastline College. *See id.*

19  On June 9, 2021, Mr. Harris was informed that he would be transferred to the Substance
20  Abuse Treatment Facility in Corcoran, California ("SATF"). *Id.* ¶ 28. Mr. Harris consulted with
21  his college coordinator, and was informed that the transfer would prevent Mr. Harris from
22  completing his summer courses at Coastline College. *Id.* ¶ 27.

23  B.   Allegations Regarding Sensitive Needs Housing

24  Mr. Harris is housed on "A-yard" at SVSP. Compl. ¶¶ 13, 24, 36, 38, 48, 51.

25  Mr. Harris alleges that he is going to be transferred to SATF, which does not have
26  sensitive needs housing. *See id.* at 1. This transfer was recommended in the afore-mentioned June
27  8, 2021, classification meeting, and was approved on June 9, 2021. *See id.* ¶¶ 26, 28.

28  Mr. Harris was given a second classification meeting on July 20, 2021. *Id.* ¶¶ 32-34. In

United States District Court
Northern District of California

1    preparation for the second classification meeting held on July 20, 2021, Mr. Harris alleges that he
2    reached a verbal agreement with his correctional counselor that she would "recommend" Mr.
3    Harris be transferred "to the SNY level 2 Correctional Training Facility (CTF) next door to
4    SVSP," or in the alternative that Mr. Harris "remain on A-yard at SVSP." *Id.* ¶ 32. Because Mr.
5    Harris expected his correctional counselor to make this recommendation, he chose not to attend
6    the second classification meeting held on July 20, 2021. *See id.* The July 20, 2021, classification
7    meeting went forward in Mr. Harris's absence. *See id.* ¶¶ 32-33. At the meeting, "the UCC
8    members" recommended that Mr. Harris be transferred to CTF, or in the alternative retained at
9    SVSP. *See id.* ¶ 33. This recommendation matched Mr. Harris's agreement with his correctional
10   counselor. *See id.*

11   On August 11, 2021, Mr. Harris's endorsement to transfer was audited by a Classification
12   Services Representative, Defendant Vang. *See* TRO Mot. at 2, Compl. ¶ 7 (stating that Defendant
13   Vang was the Classification Services Representative). Defendant Vang recommended that Mr.
14   Harris be transferred to the non-designated facility at SATF. *See* TRO Mot. at 2. On August 12,
15   2021, Mr. Harris was informed that the committee's recommendation had been overridden by
16   Defendant Vang. *See id.* ¶¶ 40 (stating that Mr. Harris was "told . . . on that date that he had been
17   formally endorsed to SATF"), 41 (stating that "Defendant Vang" made this decision "despite" the
18   classification committee's recommendation).

19   The endorsement to transfer expired on February 7, 2022, and Mr. Harris still is housed at
20   SVSP. *See* TRO Mot. at 2.

21                          **II.     SCREENING ANALYSIS**

22   Mr. Harris claims that his Eighth Amendment rights were violated because the Defendants'
23   actions putting his safety at risk; that his Fourteenth Amendment rights were violated because the
24   Defendants' actions depriving him of educational opportunities; and that his right of access to the
25   courts was violated by Defendants' failure to expedite his grievances. *See* Compl. ¶¶ 60-96.

26   Defendants must respond to Mr. Harris's Eighth Amendment claims. Mr. Harris's other
27   claims are dismissed.
28

3

A. <u>Legal Standard</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b).

*Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In screening a *pro se* complaint, a district court may consider information which properly is subject to judicial notice. *Cato v. United States*, 70 F.3d 1103, 1105 (9th Cir. 1995) (affirming a district court's dismissal of a complaint as duplicative at screening, where district court considered previous actions filed by the plaintiff); *Williams v. Paramo*, 830 F. App'x 981, 982 (9th Cir. 2020) (same, and noting that "the district court permissibly took judicial notice of multiple actions" filed by the plaintiff) (citing *Cato*, 70 F.3d at 1105). A "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on other grounds on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).[1]

B. <u>The Education-Related Claim is Dismissed with Prejudice</u>

Mr. Harris alleges that being transferred to SATF will deprive him of "educational equal protection." Compl. ¶¶ 68-72, 86-96.

To state an equal protection claim, a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993). This, in turn, required a prisoner either to identify the relevant class of prisoners to which he belongs, *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013), or to allege that he is in a "class of one" because he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*,

---

[1] *See also Spencer v. Kokol*, 744 F. App'x 515 (9th Cir. 2018) (finding that district court properly dismissed prisoner's complaint at screening) (citing *Sprewell*, 266 F.3d at 988); *Raiser v. City of L.A.*, 698 F. App'x 412, 413 (9th Cir. 2017) (same); *Morales v. Cribbs*, 633 F. App'x 434 (9th Cir. 2016) (same); *King v. Capps*, 384 F. App'x 601, 602 (9th Cir. 2010) (same).

4

528 U.S. 562, 564 (2000).

      Mr. Harris appears to intend to state a class-of-one equal protection claim: he argues he has not been "provided equal educational opportunities as those provided to other similarly situated prisoners . . . ." Compl. ¶ 72. However, the Complaint reveals that this claim is meritless. First, Mr. Harris's only education-related objection to the transfer is that it might have prevented him from "continu[ing] his Coastline College courses that were currently in progress" during the summer and fall semesters of 2021. *Id*. ¶ 26; *see also id*. ¶¶ 27, 72. But this objection was moot even before Mr. Harris filed his Complaint, because those semesters had already concluded. *Compare* Coastline College, Academic Calendar, https://www.coastline.edu/academics/academic-calendar.php (last visited Feb. 22, 2022) (showing the summer 2021 semester concluded Aug. 20, 2021, the fall 2021 semester concluded Dec. 18, 2021, and the winter 2022 semester did not begin until Jan. 31, 2022) *with* Compl. at 42 (Mr. Harris dated the Complaint January 24, 2022). The Court cannot enjoin Defendants from interrupting Mr. Harris's participation in summer and fall coursework, where that coursework has already concluded.

      Second, Mr. Harris acknowledges that SATF allows inmates to take college courses, so he may pursue his education at that facility. *See* Compl. ¶¶ 26-27; *see also* Cal. Dep't of Corr. & Rehab., Substance Abuse Treatment Facility and State Prison, Corcoran, https://www.cdcr.ca.gov/facility-locator/satf/ (last visited Feb. 22, 2022) (showing that this institution offers independent study); *see also* Coastline College, Hope Scholars Program, https://www.coastline.edu/student-life/online-and-distance-learning/inmate-education.php (last visited Feb. 22, 2022) (stating that courses are offered to inmates at both state and federal prisons, and providing instructions on how inmates may continue to pursue their courses if they are transferred to another facility). Equal protection requires only that similarly situated inmates be given "reasonable opportunities for similar studies," not that the studies be perfectly identical at each institution. *Jeldness v. Pearce*, 30 F.3d 1220, 1229 (9th Cir. 1994) (considering a claim that female prisoners were denied equal protection when they were not given access to the same programs as male prisoners). Because Mr. Harris can take college courses even if he is transferred to SATF, his "educational equal protection" is not violated by a transfer.

Because Mr. Harris's sole concern – that he might have to drop an in-progress course – is moot, and because his equal protection was not violated in any case, this claim is **DISMISSED** with prejudice.

C.     The Court-Access Claim is Dismissed with Prejudice

Mr. Harris claims that he has been deprived of his right to grieve prison wrongs and to access the courts.  *See* Compl. ¶¶ 68-72, 86-96.

Mr. Harris previously filed a lawsuit raising this claim, as well as his safety- and education-related claims.  *See* Docket No. 10, *Harris v. Atchley*, Case No. 21-cv-6577-EMC (filed Oct. 18, 2021).  In that prior suit, the Court dismissed Mr. Harris's court-access claim on the merits and with prejudice.  *See* Docket No. 13, *Harris v. Atchley*, Case No. 21-cv-6577-EMC (filed Jan. 14, 2022) (dismissing the safety- and education-related claims without prejudice, for failure to exhaust).  Mr. Harris has appealed the Court's dismissal, and that appeal remains pending.  *See* Docket No. 17, *Harris v. Atchley*, Case No. 21-cv-6577-EMC (filed Feb. 4, 2022).

Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.  *See Montana v. United States*, 440 U.S. 147, 153 (1979).  For purposes of *res judicata*, judgment entered on a motion to dismiss or for summary judgment is just as binding as a judgment entered after a trial of the facts.  *See Ruple v. City of Vermillion*, 714 F.2d 860, 862 (8th Cir. 1983), *cert. denied*, 465 U.S. 1029 (1984).

The Ninth Circuit addressed a nearly identical situation in *Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988).  In *Tripati*, the district court granted summary judgment in favor of the defendants, and the plaintiff appealed.  *See id*. at 1366-67.  While that appeal was pending, the plaintiff "filed a nearly identical complaint, naming many of the same defendants . . . ." *Id*. at 1367.  The district court concluded that the second action was precluded by the judgment in the first action, and the Ninth Circuit affirmed.  *See id*.  The Ninth Circuit explained that a federal district court judgment "'retains all of its res judicata consequences pending decision of the appeal.'"  *Id*. (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433, at 308 (1981)).  It further concluded that allowing a plaintiff to pursue a second action while appealing the first "would lead to an absurd result: Litigants would be able to refile identical cases

6

1   while appeals are pending, enmeshing their opponents and the court system in tangles of
2   duplicative litigation." *Id*.

3   Here, Mr. Harris raises the same court access claim against the same Defendants, for the
4   same alleged actions. *Compare* Compl. ¶¶ 68-72, 86-96 *with* Docket No. 10 ¶¶ 68-72, 86-96,
5   *Harris v. Atchley*, Case No. 21-cv-6577-EMC. As in *Tripati*, Mr. Harris's claims are precluded
6   despite the pendency of an appeal.

7   Because Mr. Harris's court-access claim is barred by *res judicata*, it is **DISMISSED** with
8   prejudice.

9   D.   Defendants Must Respond to the Eighth Amendment Claims

10  Mr. Harris argues that his right to safety under the Eighth Amendment is violated by
11  Defendants' decision to transfer him to a non-designated yard at SATF. *See* Compl. ¶¶ 60-67, 76-
12  85. Mr. Harris also appears to wish to challenge the policy under which he would be transferred to
13  a non-designated yard. *See id*. ¶¶ 13, 60.

14  The "'treatment a prisoner receives in prison and the conditions under which he is confined
15  are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832
16  (1994). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate
17  food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the
18  safety of the inmates.'" *Id.* To establish an Eighth Amendment claim on a condition of
19  confinement, such as an excessive risk to health or safety, a prisoner-plaintiff must show: (1) an
20  objectively, sufficiently serious, deprivation, and (2) that the official was, subjectively,
21  deliberately indifferent to the inmate's health or safety. *See id.* at 834.

22  Mr. Harris's allegations are sufficient to state Eighth Amendment claims for deliberate
23  indifference to his safety. The Ninth Circuit previously has held that a prison official exhibited
24  deliberate indifference to a prisoner's safety where that official forced a prisoner to leave
25  protective custody despite the prisoner's protestations that his life would be in danger if he were
26  forced to interact with general population prisoners. *See generally, Berg v. Kincheloe,* 794 F.2d
27  457 (9th Cir. 1986). Here, as in *Berg*, Mr. Harris believes he would be in danger of attack from
28  general population prisoners if he were forced to leave sensitive needs housing, and has made

Defendants aware of this belief. *See generally*, Compl. (citing multiple instances in which Mr. Harris protested the planned move to a non-designated facility). Moreover, courts have recognized that persons convicted of sexual offenses against minors, such as Mr. Harris, are in danger of being attacked by general population prisoners. *See, e.g., Mayshack v. Gonzales*, 437 F. App'x 615, 617-18 (9th Cir. 2011) (reversing district court's grant of summary judgment, where the plaintiff alleged jail officials were deliberate indifferent to his safety, where they failed to segregate him from the general population, despite his arrest for child molestation, and general population inmates attacked him).[2] This further supports Mr. Harris's contention that he will be in danger if moved to general population.

In the following section, the Court will deny Mr. Harris's TRO Motion because he does not show a likelihood of irreparable harm. *See infra*, III. In their opposition to the TRO Motion, Defendants argued that Mr. Harris's request for a TRO is "moot" because the endorsement to transfer Mr. Harris has expired. *See* TRO Motion. At first glance, the expiration of the endorsement to transfer would render Mr. Harris's Eighth Amendment claim moot. However, an exception to the mootness doctrine exists where a claim is "capable of repetition yet evading review." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994); *see, e.g., Turner v. Rogers*, 564 U.S. 431, 440 (2011) (where petitioner had been released from 12-month incarceration based on civil contempt judgment based on his failure to pay child support, the case was not moot because petitioner was frequently in arrears and had already been subjected to several civil contempt proceedings). A dispute qualifies for this exception "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Turner*, 564 U.S. at 439-40. Here, Mr. Harris's Eighth Amendment claim appears

---

[2] *See also Kester v. Diaz*, No. 19-CV-04205-JST, 2019 WL 3997483, at *5 (N.D. Cal. Aug. 23, 2019) (finding sensitive needs prisoner had stated a cognizable claim, and granting prisoner's request for a temporary restraining order preventing his move to a non-designated yard, because, *inter alia*, "Plaintiff's status as a sex offender may expose him to violence if housed in the general population"); *Milton v. Jacquez*, No. C 09-5785 WHA PR, 2011 WL 4344559, at *3 (N.D. Cal. Sept. 13, 2011) ("According to defendants, inmates who are at risk from other inmates, and therefore need SNY placement, typically have a commitment offense viewed unfavorably by other inmates such as sex offenses or offenses against minors . . . .").

to be capable of repetition. Although Mr. Harris's current endorsement to be transferred to SATF has expired, he may be given a similar endorsement at his next classification committee meeting. The fact that he alleges that he was in fact endorsed to be transferred notwithstanding the possible threat to his safety demonstrates that the possibility of a further endorsement for transfer is not speculative. Accordingly, for screening purposes, the Court concludes that Mr. Harris's Eighth Amendment claim is not moot, and that Defendants must address it.

Giving Mr. Harris's allegations the liberal construction required under *Balistreri*, the Court concludes that Mr. Harris sufficiently has alleged an Eighth Amendment violation.

### III.     TRO ANALYSIS

Mr. Harris asks the Court to enter a temporary restraining order enjoining his transfer to SATF. *See* TRO Mot.

Mr. Harris represents that he has fulfilled the procedural requirements to be granted a TRO. *See* Fed R. Civ. P. 65(b)(1) (stating the requirements to obtain a TRO ex parte). First, Mr. Harris states that he has served Defendants with his TRO Motion. *See* TRO Mot. at 1-2. Second, Mr. Harris filed a verified Complaint in this action, setting forth the facts relied on below. *See* Compl. at 42.

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A temporary restraining order is an "extraordinary remedy" that a court should award only when a plaintiff makes a clear showing that he is entitled to such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The substantive standards for a temporary restraining order are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20. The irreparable injury must be both likely and immediate. *See id*. at 22; *see also Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A

1 plaintiff must do more than merely allege imminent harm sufficient to establish standing; a
2 plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive
3 relief.").

4        Here, Mr. Harris's TRO Motion fails because he cannot show that irreparable harm is
5 *likely* to occur if the TRO is not granted. As noted above, Defendants have shown that Mr.
6 Harris's endorsement for transfer to SATF has expired. It is thus only possible, not necessarily
7 likely, that Mr. Harris will be transferred to SATF in the future. In addition, even if Mr. Harris is
8 endorsed to SATF at some future time, he has only established that it is possible, rather than
9 likely, that he would be physically attacked by other inmates in the non-designated facility. It is
10 well-established that a plaintiff must "demonstrate that irreparable injury is *likely*," not merely
11 possible, in order to be granted injunctive relief. *Winter*, 555 U.S. at 22 (emphasis in original)
12 ("the Ninth Circuit's 'possibility' standard is too lenient").[3]

13        The Court recognizes that it is possible that Mr. Harris may show at a later point in this
14 litigation that he is entitled to injunctive relief. For example, if Mr. Harris is endorsed for a
15 transfer to SATF or another non-designated facility at his next classification committee meeting,
16 and is able to show that convicted child molesters previously have been attacked in non-designated
17 facilities, this could alter the Court's analysis of whether harm is likely rather than merely
18 possible. At the current time, however, Mr. Harris simply has not met his burden to show that
19 irreparable harm is likely.

20 ///
21 ///

---

[3] *See also Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("As the [Supreme] Court explained, an injunction cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be.") (citing *Winter*, 555 U.S. at 22); *Freelancer Int'l Pty Ltd. v. Upwork Glob., Inc.*, 851 F. App'x 40, 41–42 (9th Cir. 2021) (finding that a district court "did not abuse its discretion" when it denied injunctive relief because the plaintiff had "failed to show a likelihood of irreparable harm," and noting that a party seeking injunctive relief "must 'demonstrate that irreparable injury is *likely*' and not merely 'a possibility'") (citation omitted), *cert. denied,* 142 S. Ct. 766 (2022); *Turo Inc. v. City of L.A.*, 847 F. App'x 442, 444 (9th Cir. 2021) (reversing district court order granting a preliminary injunction where plaintiff had not "met its burden to establish that it was likely to suffer irreparable harm," and reiterating that a possibility of irreparable harm is insufficient) (citing *Winter*, 555 U.S. at 22).

#### IV.    CONCLUSION

For the foregoing reasons, Mr. Harris's education and court-access claims are dismissed with prejudice. Defendants must respond to Mr. Harris's Eighth Amendment claims.

For the foregoing reasons and for good cause shown,

1. The following Defendants shall be served:

   a. Executive at CDCR: Kathleen Allison;

   b. Officials at Salinas Valley State Prison: M. Atchley, Warden; T. Vang, Classification Staff Representative; T. Lemon, Chief Deputy Warden; Capt. Wade, Facility A Captain.

2. Service on the listed Defendants shall proceed under the California Department of Corrections and Rehabilitation's (CDCR) e-service program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk is directed to serve on CDCR via email the following documents: the Complaint (Docket No. 1); Plaintiff's TRO Motion (Docket No. 2); this order of service; a CDCR Report of E-Service Waiver form; and a summons. The Clerk also shall serve a copy of this order on Plaintiff.

3. No later than 40 days after service of this order via email on CDCR, CDCR shall provide the Court a completed CDCR Report of E-Service Waiver advising the Court which Defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which Defendant(s) decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court a waiver of service of process for the Defendant(s) who are waiving service.

4. Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each Defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form. The Clerk shall provide to the USMS the completed USM-205 forms and copies of this order, the summons and the First Amended Complaint and Reply for service upon each Defendant who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

5.      In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

      a.      No later than **May 13, 2022**, Defendants must file and serve a motion for summary judgment or other dispositive motion.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.  If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion.  *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

      b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **June 17, 2022**.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

      c.      Defendants **shall** file a reply brief no later than **July 1, 2022**.

6.      Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . .  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendants file a motion for summary judgment for failure to exhaust administrative remedies, it is seeking to have the case dismissed.  As with other defense summary judgment motions, if a

motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

6. All communications by Plaintiff with the Court must be served on defense counsel by mailing a true copy of the document to defense counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until defense counsel has been designated, Plaintiff may mail a true copy of the document directly to each individual Defendant, but once a Defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.**

8. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

9. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

This order disposes of Docket No. 2.

**IT IS SO ORDERED**.

Dated: March 1, 2022

_____
EDWARD M. CHEN
United States District Judge