UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL JAY HARRIS,

Plaintiff,

v.

MATTHEW ATCHLEY, et al.,

Defendants.

Case No. 22-cv-00529-EMC

**ORDER DENYING (1) DEFENDANTS' MOTION TO DISMISS COMPLAINT AND (2) PLAINTIFF'S MOTION TO COMPEL DISCOVERY; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

Docket Nos. 24, 28, 41

This is a *pro se* prisoner's civil rights action. Plaintiff Michael Harris alleges that he is "a convicted child rapist and molester 19 times over," Docket No. 1 ("Complaint") ¶ 43, and raises claims regarding his impending transfer from sensitive needs custody at Salinas Valley State Prison to a non-designated yard, *see generally, id*.

The Court reviewed the Complaint pursuant to 28 U.S.C. § 1915A, dismissed its claims in part, and ordered Defendants to respond to the remaining claim. *See* Docket No. 10 ("Screening Order"). Mr. Harris filed three motions seeking temporary restraining orders ("TRO"),[1] each of which the Court denied. *See* Docket Nos. 10, 15, 40. In each denial, the Court explained that injunctive relief was unavailable because Mr. Harris did not show he was at imminent risk of transfer. *See id.*

Defendants now move to dismiss the Complaint. They argue that the Court lacks subject

[1] When considered with the TRO motions Mr. Harris filed in an earlier action on the same issue, Mr. Harris has filed six TRO motions in addition to the motion for a preliminary injunction discussed herein. *See* Docket Nos. 3, 6, 12, *Harris v. Atchley*, Case No. 3:21-cv-6577-EMC (dismissed Jan. 14, 2022, for failure to exhaust).

matter jurisdiction over Mr. Harris's claims because those claims are moot. *See* Docket No. 24 ("Dismissal Motion"). For the reasons given below, the Dismissal Motion is **DENIED**. Denial is without prejudice to renewal of the Dismissal Motion with more robust arguments supported by legal citations.

Mr. Harris asks the Court to compel Defendants to respond to certain discovery requests, *see* Docket No. 28, which Defendants argue are overbroad, *see* Docket No. 30. Defendants also argue that, because this action should be dismissed, they should not be compelled to produce the documents in question. *See id*. The Court **DENIES** Mr. Harris's motion to compel without prejudice to renewal if the question of subject matter jurisdiction is resolved in his favor. The Court stays discovery until the question of subject matter jurisdiction is resolved.

For the reasons given below, the Court **GRANTS** Mr. Harris's request for a temporary restraining order preventing his transfer from SVSP during the pendency of this action. *See* Docket Nos. 32, 41.

## I. BACKGROUND

Mr. Harris was convicted of the rape and molestation of a child. FAC ¶¶ 31, 43. He has been in the custody of the California Department of Corrections and Rehabilitation ("CDCR") since 2010. *Id.* ¶ 5. At all relevant times, Mr. Harris has been incarcerated at Salinas Valley State Prison ("SVSP") as a sensitive needs prisoner. *Id.* ¶¶ 6, 15. He is a "Level II" inmate. Dismissal Mot., Ex. A ¶ 3 (citing Cal. Code Regs. tit. 15, §§ 3375(i), 3375.1(a)).

At some point during 2021, Mr. Harris was informed that he could be transferred to another prison pursuant to CDCR's "NDPF policy." *See generally, id.*; *see also id*. at ¶¶ 13, 45 (expressly stating that the transfer would be pursuant to the "NDPF *policy*") (emphasis added), 60-67 (stating that Mr. Harris challenged the "NDPF *policy*" by administrative grievance) (emphasis added). He filed the instant action on or before January 25, 2022, and asked the Court to enjoin Defendants from transferring him to an NDPF yard, to enjoin Defendants from punishing him for refusing such a transfer, and to find that NDPF yards inherently violate the Eighth Amendment. [2]

[2] The Court found that Mr. Harris's other claims, for violation of "educational equal protection," violation of his right to file grievances, and violation of his right to access the courts, failed on the face

*See id*. at 1 (stating the Complaint was received by the Court on January 25, 2022); ¶¶ 109-13 (explaining relief sought). The Court found that Mr. Harris's attempt "to challenge the *policy* under which he would be transferred to a non-designated yard" raised a cognizable Eighth Amendment claim. Screening Order at 7 (emphasis added).

On November 14, 2022, California promulgated regulations regarding NDPFs. Specifically, California defined a "Non-Designated Programming Facility [a]s an integrated housing facility or institution established for inmates demonstrating a willingness to participate in rehabilitative programs and conform to departmental policies." Cal. Code Regs. tit. 15, § 3000 (West 2022) ("Definitions"). *See also* Cal. Code Regs. tit. 15, § 3269.4(a) (West 2022) ("Non-Designated Programming Facility (NDPF). NDPF houses inmates who demonstrate positive behavior and a willingness to participate in rehabilitative programs and conform to departmental policies, free from Security Threat Group (STG) influence and behavior.").

Mr. Harris subsequently filed a motion asking the Court to enjoin enforcement of these new regulations. *See* Docket No. 32. In his reply in support of that motion, he argued that "[t]he changes proposed by the CDCR, through its regulatory actions to codify [its] NDPF policy, must not be found legal." Docket No. 34 at 2. Mr. Harris has never sought to amend the Complaint to challenge the CDCR NDPF regulations, as opposed to the prior unofficial NDPF policy. *See generally*, Docket.

## II. <u>DEFENDANTS' DISMISSAL MOTION</u>

Defendants present a sparse argument, with no supporting analysis or citation, that this action should be dismissed as moot because the Court lacks the authority to grant the relief sought by Mr. Harris. *See* Dismissal Mot at 6:4-19. Defendants have not convinced the Court that this action is moot.

### A. <u>Legal Standard</u>

Article III's case or controversy requirement "subsists through all stages of federal judicial proceedings." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). *See also FEC v. Wis. Right to Life, Inc.*,

---

of the Complaint. *See* Screening Order at 4-7.

551 U.S. 449, 461 (2007) ("Article III's 'case-or-controversy requirement subsists through all stages of federal judicial proceedings .... [I]t is not enough that a dispute was very much alive when suit was filed'") (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).

"If the controversy is moot, both the trial and appellate courts lack subject matter jurisdiction, . . . and the concomitant 'power to declare the law' by deciding the claims on the merits." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (citation omitted). A case becomes moot "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U. S. 478, 481 (1982) (*per curiam*)). In other words, a case is moot if, "due to intervening events, there is no longer a live controversy necessary for Article III jurisdiction." *Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022). Further, "when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party," the case is moot. *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) (emphasis added). In many ways, standing and mootness inquiries overlap.

B. Analysis

Defendants represent that inmates with Mr. Harris's classification score must "be housed in a facility designated as Level II." Dismissal Mot., Ex. A ¶ 3 (citing Cal. Code Regs. tit. 15, §§ 3375(i), 3375.1(a)). Defendants also represent that they do not operate any sensitive needs yards for Level II inmates. *See id.* ¶ 6. Although the Dismissal Motion is far from a model of clarity, Defendants state that because they abolished the last Level II sensitive needs yard by July 2022, the Court can no longer grant Mr. Harris the relief he seeks. Defendants also argue that the Court cannot order them to re-establish such a yard to house Mr. Harris. *See generally,* Dismissal Mot. at 6 (setting forth Defendants' argument in 15 lines). In other words, Defendants argue that they mooted this action by abolishing the facilities necessary to grant Mr. Harris's chosen relief. The 15-line argument provided in the Dismissal Motion simply is insufficient for the Court to find in Defendants' favor.

**First**, Defendants have not provided any analysis or citation to support their contention

United States District Court
Northern District of California

that the Court cannot order them to re-establish a Level II sensitive needs facility.[3] *See* Dismissal Mot. at 6 (citing a single case for the general principle of mootness, but not explaining why the Court lacks this authority). Federal courts previously have ordered major systemic change where CDCR's actions were found to violate the Eighth Amendment, including in circumstances where housing is implicated. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011) (upholding remedial plan that required state to reduce the California prison population closer to design capacity); *Perez v. Cate*, No. C 05-5241 JSW (N.D. Cal. filed 2005) (establishing a remedial plan for the provision of dental care). If Defendants believe that the Court lacks authority to do so in this instance, they must explain *why*, with legal citations to support their argument.

**Second**, even if the Court lacks the authority to order Defendants to re-establish a Level II sensitive needs facility, Defendants do not adequately explain why the Court cannot grant more limited relief to Mr. Harris. Mr. Harris appears to seek to remain at his current, Level III facility. *See generally*, Opp. (citing Cal. Code Regs., tit. 15, § 3375.1(b).) Defendants state that Mr. Harris's Level II designation "precludes his housing in a Level III or Level IV facility," Dismissal Mot. at 6, but again do not explain *why*.

Mr. Harris argues that a CDCR regulation allows officials to house him at a facility which does not match his security designation. *See* Opp. at 7. Defendants argue, again without explaining *why*, that this regulation only applies to Level IV facilities, and cannot be applied to a Level II inmate such as Mr. Harris. *See* Reply at 2. On its face the regulation appears to allow inmates to be housed in facilities which do not match their security designation. *See* Cal. Code Regs., tit. 15, § 3375.1(b) (stating that it applies to transfers to any sub-facility with "a security level higher than that which is consistent with the inmate's placement score," and allowing officials to issue "an administrative determinant which prohibits movement to the lower security level facility"). Moreover, the next regulation in the chapter states inmates may "be housed in a facility with a security level which is not consistent with the inmate's placement score" if certain

[3] Defendants represent that "CDCR operates other housing units to keep inmates like Plaintiff safe, with full programming opportunities and privileges," Dismissal Mot. at 2, but do not provide any details regarding such housing, *see generally, id*.

United States District Court
Northern District of California

"administrative determinants" are present. Cal. Code Regs. tit. 15, § 3375.2(a). It allows "departmental officials to override the placement of an inmate at a facility according to their placement score," Cal. Code Regs. tit. 15, § 3375.2(b), and lists an "SNY" designation as a determinant which allows inconsistent housing, *see id*. at § 3375.2(b)(24). It appears to the Court that there remains relief which can be granted, in the form of a variance allowed under California regulations. Thus, before Mr. Harris's claims may be found moot, Defendants must explain *why* this Court cannot order them to grant Mr. Harris a variance which appears permissible under California regulations.

Because Defendants have failed to show that this action is moot, their Dismissal Motion is **DENIED**.

Although the Dismissal Motion was inadequate, the Court is hesitant to proceed to the merits of this action if subject matter jurisdiction is in doubt. Courts repeatedly have emphasized the importance of subject matter jurisdiction. It is so important that it may be raised "at any time during the pendency of the action, even on appeal." *Nevada v. Bank of Am. Corp*., 672 F.3d 661, 673 (9th Cir. 2012); *see also King v. Colvin*, No. C-13-1897 EMC, 2013 WL 3388730, at *1 (N.D. Cal. July 8, 2013) (same). The Court therefore will allow Defendants one additional chance to challenge subject matter jurisdiction.

The Court notes that a state action challenging CDCR's NDPF policy recently was dismissed as moot. *See* Dismissal Order, *Villarreal v. Allison*, Case No. 34-2021-80003779 (Sacramento County Sup. Ct., June 16, 2023) ("*Villarreal* Action") (adopting the Tentative Ruling). *Villarreal* was found moot because the plaintiff challenged only the unofficial NDPF policy, rather than the officially promulgated regulations which supplanted that policy. *See* Tentative Ruling, *Villarreal* Action (June 1, 2023). Although the Sacramento County Superior Court initially had enjoined enforcement of the NDPF policy, it dissolved that injunction when the policy was supplanted by formal regulations, because "the petition does [not] state any legal claims based on the new regulations." Order Dissolving Preliminary Injunction, Villarreal Action (December 21, 2022). The Superior Court subsequently instructed the parties to brief whether the entire petition was moot because it challenged an unofficial policy which had been supplanted by

United States District Court
Northern District of California

formal regulations. *See* Tentative Ruling at 1, Villarreal Action (June 1, 2023). The Superior Court concluded that "because the underground regulation formerly at issue in the Petition has since been superseded by formal regulations, no actual controversy exists." *Id*. at 2. It subsequently dismissed the petition as moot. *See* Dismissal Order, *Villarreal* Action (June 16, 2023).

Here, as in the *Villarreal* Action, Mr. Harris's pleadings challenge the unofficial NDPF policy rather than the official regulations. *See generally*, Compl. Those regulations were issued after the date this suit was filed, *see supra* I, and so theoretically could render Mr. Harris's Complaint moot. *See, e.g.*, *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 945 (9th Cir. 2019) (finding an action moot where the plaintiff challenged "previous versions of" a regulation, which had been "repealed and replaced" by new versions); *see also Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (recognizing that amendments to a regulation or ordinance can render a case moot). Defendants did not raise such an argument here.

Defendants shall have four weeks to: (1) renew their Dismissal Motion should they chose but must do so with robust arguments, supported by case law, or (2) notify the Court that they no seek to challenge the Court's jurisdiction.

## III. <u>PLAINTIFF'S DISCOVERY MOTION</u>

Mr. Harris asks the Court to compel Defendants to respond to certain discovery requests. *See* Docket No. 28. Defendants respond that these requests are overbroad. *See* Docket No. 29. For example, Mr. Harris seeks

> all documents which refer or relate to the policies, procedures, or practices in effect beginning on December 12, 2017, and through to the present time regarding the housing and programming options of prisoners who were serving or are serving a term of incarceration within CDCR prisons for a sex offense or sex offenses.

Docket No. 28 at 1-2. The Court agrees that such a request goes well beyond the scope of this action, which at the present time concerns only the transfer of a single Level II sex offender from sensitive needs yards to NDPF yards.

Defendants also argue that discovery should be stayed until the Dismissal Motion is resolved. *See* Docket No. 29. Although the instant order denies the Dismissal Motion, the Court

agrees that discovery should be stayed until the question of subject matter jurisdiction is resolved. Accordingly, Mr. Harris's motion to compel is **DENIED** without prejudice to renewal if the jurisdictional question is resolved in his favor.

## IV. PLAINTIFF'S MOTIONS FOR A PRELIMINARY INJUNCTION AND RECONSIDERATION

As noted, *supra*, Mr. Harris repeatedly has sought preliminary injunctive relief in this action. In each motion, Mr. Harris claimed Defendants intended to transfer him to another facility, and each time Defendants responded that Mr. Harris had not been endorsed for a transfer. The Court denied each motion because Mr. Harris had not shown he was at imminent risk of injury. *See* Docket Nos. 10, 15, 40. In their oppositions to the pending motions for a preliminary injunction and for reconsideration or the prior denial of a TRO, Defendants likewise relied on the fact that no transfer was imminent. *See* Docket Nos. 33, 42.

Circumstances now have changed. On July 27, 2023, Defendants filed a declaration which stated that Mr. Harris would be transferred to an NDPF facility on August 1, 2023. *See* Docket No. 43.[4] In light of these changed circumstances, the Court concludes that limited injunctive relief is warranted to preserve the status quo and enjoins Defendants from transferring Mr. Harris.

### A. Legal Standard

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A temporary restraining order is an "extraordinary remedy" that a court should award only when a plaintiff makes a clear showing that he is entitled to such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The substantive standards for a temporary restraining order are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the

---

[4] This updated Defendants' July 24, 2023, declaration, which stated that Mr. Harris had been endorsed for a transfer but that no transfer date had been set. *See* Docket No. 42.



United States District Court
Northern District of California

balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20. "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). The issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

The Prisoner Litigation Reform Act of 1995 ("PLRA") restricts the power of the court to grant prospective relief in actions involving prison conditions. *See* 18 U.S.C. § 3626(a). Section 3626(a)(2) permits the court to enter a temporary restraining order or preliminary injunction "to the extent otherwise authorized by law" but requires that such an order "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.*

B. <u>Analysis</u>

Here, the requirements for temporary injunctive relief are met. In addition, the Court believes the relief granted "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). Indeed, the Court believes the relief granted to Mr. Harris herein presents an insubstantial a burden on the government.

**First**, Mr. Harris has raised at least a serious legal question regarding the merits of this action because the Ninth Circuit repeatedly has recognized that sex offenders are at risk of being attacked by general population prisoners. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (reversing summary judgment grant, where sex offender was attacked by general population

prisoners); *Starr v. Baca*, 652 F.3d 1202, 1210 (9th Cir. 2011) (same); *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (describing a California policy of housing sex offenders in administrative segregation); *Redman v. Cty. of San Diego*, 896 F.2d 362, 363 (9th Cir. 1990), *on reh'g*, 942 F.2d 1435 (9th Cir. 1991) (reversing summary judgment grant, where sex offender was attacked by general population prisoners); *Byerly v. Deputy Warden*, 246 F. App'x 512, 513 (9th Cir. 2007) (considering claim that sex offender was attacked when held in general population). The Ninth Circuit has specifically recognized that placing a sex offender in housing with general population prisoners poses a risk of physical harm to that sex offender, which may violate the Eighth Amendment. *See Starr*, 652 F.3d at 1210 (finding a complaint asserting as much should not have been dismissed). *Cf. Neal v. Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997) (concluding that the "sex offender" label has such significant "stigmatizing consequences" in prison that inmates must be given procedural protections before that label is attached). Considering this ample precedent, there is a serious legal question as to whether Defendants' NDPF policy violates the Eighth Amendment. And, for the reasons stated above, Defendants' mootness arguments are not persuasive.

**Second**, Mr. Harris has shown he is likely to be irreparably harmed if an injunction does not issue. As noted above, Mr. Harris has been endorsed for an imminent transfer to a facility where he will be housed with general population prisoners. In the absence of an injunction, Mr. Harris will shortly be placed in an environment which the Ninth Circuit repeatedly has found dangerous.

**Third**, Mr. Harris has shown that the balance of hardships tips sharply in his favor. The TRO granted herein merely preserves the status quo. Defendants are not (at this time) being required to open a new facility for Mr. Harris, and instead need only maintain him at the facility where he already is housed. This would not appear to require any administrative or monetary outlay. And as noted *supra*, this appears to be permitted by Defendants' own regulations. A TRO would merely preserve the status quo. Weighing the minimal action required from Defendants against the substantial risk posed to Mr. Harris, the scale tips sharply in his favor.

**Fourth**, an injunction is in the public interest. The public has an interest in ensuring that

prison conditions comply with the Eighth Amendment.

The Court therefore **GRANTS** Mr. Harris's request for a TRO preventing Defendants from moving him from sensitive needs housing at SVSP to an NDPF yard. Pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, the Court hereby **ORDERS** that Defendants are enjoined from placing Mr. Harris on an NDPF yard or otherwise requiring him to be housed with general population inmates.

To the extent Mr. Harris seeks to enjoin Defendants from enforcing their NDPF regulations at all, his requests for injunctive relief are **DENIED**. *See* Docket No. 28 (asking the Court to enjoin Defendants from enforcing their regulations). **First**, such relief affects thousands of prisoners, and thus is not narrowly tailored to Mr. Harris's circumstances. **Second**, Mr. Harris's Complaint challenged only the NDPF policy, and not the promulgated regulations. *See generally*, Compl. Enjoining enforcement of the regulations may be beyond the scope of this action.

## V. CONCLUSION

For the foregoing reasons,

1. Defendants' Dismissal Motion is **DENIED** without prejudice to renewal. No later than August 28, 2023, Defendants **either** shall file a renewed dismissal motion explaining, with citations, why the Court lacks subject matter jurisdiction over this action or shall notify the Court that they do not intend to file such a motion and instead elect to proceed to the merits.

If Defendants file a renewed dismissal motion, Mr. Harris's opposition to such motion shall be due **September 25, 2023**. Defendants shall file a reply **October 9, 2023**.

If Defendants notify the Court that they do not intend to file a dismissal motion and instead elect to proceed to the merits, the Court will establish a briefing schedule for a dispositive motion addressing this action's merits.

2. Mr. Harris's motion to compel production of documents is **DENIED**.

3. Mr. Harris's request for a TRO is **GRANTED IN PART AND DENIED IN PART**. To the extent Mr. Harris seeks to enjoin the enforcement of CDCR's NDPF regulations across the whole of California, as to every prisoner, his requests are denied. To the extent Mr.

United States District Court
Northern District of California

Harris seeks to enjoin his own transfer to an NDPF yard, his requests are granted.

The Court hereby **ENJOINS** Defendants and their officers, agents, servants, employees, and attorneys, and any other person or entity subject to their control or acting directly or indirectly in concert or participation with Defendants from placing Mr. Harris on an NDPF yard or otherwise requiring him to be housed with GP inmates. This Temporary Restraining Order shall take effect immediately and shall remain in effect until August 14, 2023.

Defendants are hereby ordered to show cause why a preliminary injunction should not be ordered enjoining Defendants, as well as their agents, assigns, and those acting in concert with Defendants, from transferring Mr. Harris to an NDPF yard during the pendency of this action.

Defendants' response to this order to show cause must be filed and served by **noon on August 3, 2023**. Plaintiff may have until **August 7, 2023** to file a response. A hearing on the order to show cause shall be held on **August 10, 2023, at 1:30 p.m.** The hearing will be held virtually via videoconference.

**Webinar Access**: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/judges/chen-edward-m-emc/.

**General Order 58**. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

**Zoom Guidance and Setup**: https://www.cand.uscourts.gov/zoom/

The litigation coordinator or other appropriate staff will facilitate Plaintiff's appearance for this scheduling conference via Zoom webinar. So that Mr. Harris receives appropriate assistance, a copy of this order shall be mailed to: Litigation Coordinator, Salinas Valley State Prison, P.O. Box 1020, Soledad, CA 93960-1020.

4. Pursuant to Federal Rule of Civil Procedure 65(b)(2), an adverse party may consent to the extension of a TRO. Accordingly, in lieu of a response to this order to show cause, Defendants may consent to an extension of the TRO until Defendants have filed their second dismissal motion or election to proceed to the merits of this action. If Defendants file such a consent, the Court will vacate the date of the preliminary injunction hearing, and will establish a

United States District Court
Northern District of California

briefing and hearing schedule on the preliminary injunction after the Court receives Defendants' second dismissal motion or election to proceed to the merits.

This order disposes of Docket Nos. 24, 28, and 41.

**IT IS SO ORDERED**.

Dated: July 29, 2023

EDWARD M. CHEN
United States District Judge